IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-02226-RMR-KAS

LEVY PREMIUM FOODSERVICE LIMITED PARTNERSHIP, an Illinois limited
partnership,

      Plaintiff,

v.

FUTURE LEGENDS, LLC, a Nevada limited liability company,
JEFF KATOFSKY, an individual,

      Defendants.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

      This matter is before the Court on Defendant Jeff Katofsky's **Motion to Dismiss
Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3)** [#20] (the
"Motion"). Plaintiff filed a Response [#22] in opposition to the Motion [#20], and Defendant
Katofsky filed a Reply [#23]. The Motion [#20] has been referred to the undersigned for a
Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and
D.C.COLO.LCivR 72.1(c)(3). *See* [#21]. The Court has reviewed the briefs, the entire
case file, and the applicable law. For the reasons stated below, the Court **RECOMMENDS**
that the Motion [#20] be **DENIED**.

## I. Background[1]

This lawsuit arises from a purported breach of contract by Defendant Future Legends, LLC with respect to a Management Agreement (the "Agreement") concerning Plaintiff's provision of certain food and beverage services at a multi-sport complex facility in Windsor, Colorado. *Compl.* [#10-1][2] ¶¶ 6, 16, 31, 33. Plaintiff also sues Defendant Jeff Katofsky ("Katofsky"), who signed a Guaranty for any amounts owing to Plaintiff under the Agreement which were not paid by Defendant Future Legends. *Id.* ¶¶ 17, 32. In the present Motion [#20], Defendant Katofsky seeks dismissal of the sole breach of contract claim asserted against him on the bases of lack of personal jurisdiction and improper venue.

## II. Standard of Review

### A.    Fed. R. Civ. P. 12(b)(2)

Rule 12(b)(2) of the Federal Rules of Civil Procedure allows a defendant to challenge a court's exercise of personal jurisdiction. The plaintiff bears the burden of establishing personal jurisdiction over a defendant. *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988). When, as here, the Court decides a Rule 12(b)(2) motion to dismiss without holding an evidentiary hearing, "the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008). "To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is

---

[1] Unless otherwise stated, the Court cites page numbers assigned by the Court's CM/ECF docketing system located on at the top of each filing, rather than to any original page numbering on documents submitted to the Court.

[2] The redacted, publicly accessible version of the Complaint is docketed at [#10-1]. The unredacted Complaint, which is filed under Level 1 restriction, is docketed at [#1].

legitimate under the laws of the forum state *and* that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Far W. Cap., Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995) (citing *Rambo*, 839 F.2d at 1416) (emphasis in original).

Federal Rule of Civil Procedure 4(k)(1)(A) permits federal courts to exercise personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district is located;" thus, Rule 4(k)(1)(A) implicates Colorado's long-arm statute. Colorado's long-arm statute provides multiple bases for the exercise of personal jurisdiction, including: (1) the commission of a tortious act in Colorado; (2) transaction of business in Colorado; and (3) the ownership, use, or possession of any real property situated in this state. Colo. Rev. Stat. § 13-1-124(1). Additionally, "[t]he Colorado Supreme Court has interpreted Colorado's long-arm statute to extend jurisdiction to the fullest extent permitted by the Due Process Clause of the Fourteenth Amendment." *AST Sports Sci., Inc.*, 514 F.3d at 1057 (citing *Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004) (referencing *Mr. Steak, Inc. v. Dist. Ct.*, 574 P.2d 95, 96 (Colo. 1978))).

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)). The Supreme Court has distinguished between two kinds of personal jurisdiction: "general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S.

351, 358 (2021) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

The Due Process Clause requires that the defendant have sufficient "minimum contacts" with the state, so that the exercise of jurisdiction would not violate "traditional conception[s] of fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 464 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The "minimum contacts" test may be established by general jurisdiction or specific jurisdiction. *Otter Prods., LLC v. Phone Rehab, LLC*, No. 19-cv-00206-RM-MEH, 2019 WL 4736462, at *4 (D. Colo. Sept. 27, 2019).

A state court may exercise general jurisdiction over any claims against defendants who are "essentially at home" in the state; this is true when an individual is domiciled in the state. *Ford Motor Co.*, 592 U.S. at 352 (citing *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 919) (quotation marks omitted). In determining whether a forum State may assert specific jurisdiction over a nonresident defendant, the Court "focuses on the relations among the defendant, the forum, and the litigation." *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 780 (1984). A plaintiff must establish: (1) the defendant "purposefully directed" his activities toward the forum state, and (2) the litigation is a result of injuries that "arise out of or relate to" the defendant's contacts with the forum state. *Burger King*, 471 U.S. at 472.

**B.    Fed. R. Civ. P. 12(b)(3)**

"A motion to dismiss based on a forum selection clause frequently is analyzed as a motion to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3)." *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 956 (10th Cir. 1992). On a Rule 12(b)(3)

motion, the plaintiff has the burden to show that venue is proper. *Ervin & Assocs., Inc. v. Cisneros*, 939 F. Supp. 793, 796 (D. Colo. 1996). In determining whether dismissal based on improper venue is appropriate, the Court may "consider[ ] evidence outside the complaint such as a defendant's affidavits." *Hancock v. Am. Tel. & Tel. Co., Inc.*, 701 F.3d 1248, 1260 (10th Cir. 2012). "[A] plaintiff may rest on the well-pled facts in the complaint to oppose a motion to dismiss for improper venue, but only to the extent that such facts are uncontroverted by defendant's evidence." *Id.* (internal quotation marks omitted). However, "the court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff." *Id.* at 1261 (quoting 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1352, at 324 (2004) (internal footnotes omitted)).

### III. Analysis

### A.    Personal Jurisdiction

Defendant Katofsky argues that the Complaint [#1] is "entirely devoid" of allegations demonstrating that he has the requisite "minimum contacts" with Colorado, particularly because he is a California resident, *see Compl.* [#10-1] ¶¶ 7, 9, that the Guaranty was executed by him in California,[3] and that he has no contacts with Colorado. *Motion* [#20] at 4.

In its Response [#22], Plaintiff provides the following information regarding Defendant Katofsky's contacts with Colorado. Plaintiff's claims in this lawsuit relate to the Future Legends Sports Complex, a multi-sport complex located in Windsor, Colorado (the

---

[3] Defendant Katofsky does not provide a citation in support of this clause, and neither the Complaint nor the Guaranty clearly demonstrate this in any obvious place. *See, e.g.*, *Compl.* [#10-1] ¶ 16; *Guaranty* [#1-1] at 46 (noting Defendant Katofsky's "current address" but not the location of signing). However, in his Declaration filed in connection with his Reply [#23], he states that he "executed the Guaranty in California." *Def. Katofsky Decl.* [#23-1] ¶ 7.

"Complex"), which is operated by Defendant Future Legends, LLC. *Compl.* [#10-1] ¶ 15.
Plaintiff points out that Defendant Katofsky represents himself as the Co-Founder and
CEO of Future Legends Complex, and that he is the managing member of Future
Legends, LLC. *Response* [#22] at 2 (citing Jeff Katofsky's LinkedIn page at
https://www.linkedin.com/in/jeff-katofsky-0b191197/ ("Co-Founder & CEO Future
Legends Complex Mar 2019-Present 5 yrs 9 mos Windsor, Colorado, United States");
Future Legends' website at https://futurelegendscomplex.com/faq/ ("Future Legends
Complex is co-founded by Jeff Katofsky and Ryan "Spilly" Spilborghs. Jeff is the
managing member of Future Legends, LLC[.]")).

On December 1, 2020, Plaintiff executed the Agreement with Defendant Future
Legends, LLC to exclusively manage the food and beverage services at the Complex for
a ten-year term. *Compl.* [#10-1] ¶ 16; *Agreement* [#1-1] at 22 § 12(a). The Guaranty
supporting the Agreement, which was signed by Defendant Katofsky on December 1,
2020, noted that he was a managing member of Future Legends, LLC. *Guaranty* [#1-1]
at 42, 47. In the Guaranty, he guaranteed all obligations owed by Future Legends, LLC
in connection with the Agreement to Plaintiff. *Id.* at 42.

It is undisputed that Defendant Katofsky has had at least some contacts with
Colorado. *See, e.g.*, *Reply* [#23] at 2. Maxx Phillips ("Phillips"), the Regional Manager for
Plaintiff's Colorado market, first met Defendant Katofsky in early October 2022 at a
meeting at the Complex in Windsor, Colorado. *Phillips Decl.* [#22-1] ¶¶ 5, 7. Defendant
Katofsky came to Colorado for business relating to his ownership of and leadership role
with Future Legends, LLC on numerous other dates. *Id.* ¶¶ 8-9. For example, Mr. Phillips

and/or others of Plaintiff's staff attended meetings and events with Defendant Katofsky at the Complex in Windsor or elsewhere in Colorado on the following dates:

(1) First week of October 2022: Meeting at the Complex attended by Mr. Phillips and Defendant Katofsky;

(2) December 20, 2022: Meeting at the Complex attended by Mr. Phillips, Defendant Katofsky, and Scott Sweeney (Vice President, Mountain Resorts for Plaintiff);

(3) February 9, 2023, at 6:15 p.m.: Meeting at Roadhouse Boulder Depot, 2366 Junction Place, Boulder, Colorado 80301, attended by Mr. Phillips, Defendant Katofsky, and Derek Marsh ("Marsh") (Director of Operations for Plaintiff);

(4) April 21 and May 26, 2023: Food tastings at the Complex attended by Mr. Phillips, Defendant Katofsky, and Mr. Marsh;

(5) July 10, 2023: Dinner at 2519 Shields Street, Suite 1F, Fort Collins, Colorado, attended by Mr. Phillips and Defendant Katofsky;

(6) September 27, 2023, 4:00-7:00 p.m.: End-of-season party at Loveland Laser Tag, 401 N. Denver Avenue, Loveland, Colorado 80537, with attendees including Defendant Katofsky, Kayla Hickcox ("Hickcox") (Hourly Operations Manager with Plaintiff), Kayla Pope (Premium Manager with Plaintiff), and "several other staff" of Defendant Future Legends, LLC;

(7) October 7, 2023, at 4:00 p.m.: Meeting at the Complex, attended by Mr. Phillips, Defendant Katofsky, Casey Katofsky, and Cassie Jahn (Future Legends' Director of Events);

(8) April 18, 2024, at 9:30 a.m.: Meeting at the Complex attended by Mr. Phillips,

Defendant Katofsky, Defendant Future Legends, LLC's Executive Team, and

Ms. Hickcox.

*Id.* ¶¶ 9, 12. In addition, Mr. Phillips witnessed Defendant Katofsky at the Complex on

May 23, 2023, May 27, 2023, and July 19, 2024, attending games there, and knows that

Defendant Katofsky was "personally on site" at the Complex for several more games in

2023 and 2024. *Id.* ¶¶ 10-11. Mr. Phillips concludes: "Throughout my interactions with

[Defendant] Katofsky and staff of Future Legends, it was clear that [Defendant] Katofsky

acted as the owner and CEO and that he had ultimate decision-making authority over

Future Legends. For example, any large purchases or decisions had to be approved by

Defendant Katofsky." *Id.* ¶ 16.

In his Reply, Defendant Katofsky states that Future Legends, LLC has over twenty

members, including the Katofsky Family Trust, but that he himself is not a member, only

the manager. *Def. Katofsky Decl.* [#23-1] ¶¶ 1-4. He asserts that he is not, and never has

been, the CEO of either Future Legends, LLC or the Complex. *Id.* ¶¶ 8-9. He further states

that he attended meetings in Colorado solely in his capacity as manager of Future

Legends, LLC, not in connection with his role as personal guarantor of the Agreement

between Plaintiff and Future Legends, LLC. *Id.* ¶¶ 10-11

Defendant Katofsky's sole argument regarding personal jurisdiction is that he lacks

minimum contacts with the State of Colorado. *See Motion* [#20] at 4. Thus, he implicitly

argues that the Court lacks specific jurisdiction over him. *See generally Burger King*, 471

U.S. at 472-74. Plaintiff does not argue in its Response [#22] that the Court has general

jurisdiction over Defendant Katofsky and, given that Defendant Katofsky's California

residency is undisputed, no basis appears to exist for such an argument anyway. *See Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 924 ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]").

Regarding the minimum contacts requirement of specific jurisdiction, Plaintiff must show that Defendant Katofsky "has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities[.]" *Burger King*, 471 U.S. at 472-73 (citations and quotation marks omitted). The Court addresses each of these requirements in turn.

### 1. The "Purposefully Directed" Requirement

This first element requires Plaintiff to demonstrate that Defendant Katofsky "purposefully directed his activities at residents of" the State of Colorado. *Burger King*, 471 U.S. at 472.

"Purposeful direction (sometimes referred to as purposeful availment) requires that a defendant have deliberately engaged in significant activities within the forum State or deliberately directed its activities at the forum State, so that it has manifestly availed itself of the privilege of conducting business there." *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 840 (10th Cir. 2020) (internal citation, quotation marks, and alteration marks omitted). "Purposeful direction is a product of both the quantity and quality of a defendant's contacts with the forum." *Id.* "The requirement ensures that a defendant will not be subject to the laws of a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, the unilateral activity of another party or a third person, or the mere foreseeability that its actions may cause injury in that jurisdiction." *Id.* (internal quotation marks and citations omitted).

The Tenth Circuit has "identified three distinct purposeful-direction frameworks, each focusing on a particular aspect of a defendant's contacts with the forum state[.]" *XMission, L.C. v. PureHealth Rsch.*, 105 F.4th 1300, 1309 n.9 (10th Cir. 2024). The first concerns whether the defendant has "continuing relationships with forum state residents." *Id.* (citation omitted). The second concerns whether the defendant deliberately exploited the forum state market. *Id.* The third concerns whether harmful effects were felt in the forum state. *Id.*

Defendant Katofsky argues that the Court lacks personal jurisdiction under the harmful-effects test of *Calder v. Jones*, 465 U.S 783 (1984). *See Reply* [#20] at 3-4 (citing *Calder*'s test); *PureHealth Rsch.*, 105 F.4th at 1309 (discussing *Calder*'s "harmful-effects test"). Additionally, Defendant Katofsky makes much of the fact that, *as the guarantor* of the Guaranty—not as the manager of Future Legends, LLC—he had no contacts with Colorado. *See id.* However, he provides no legal authority, and the Court has found none, that puts so fine a point on the minimum contacts that a personal jurisdiction analysis requires. This is not a situation where Defendant Katofsky embodies separate legal entities as a guarantor, as a manager of Future Legends, LLC, and as himself, individually. This argument, rather, appears to relate to the second element of the minimum contacts test, i.e., whether this "litigation results from alleged injuries that 'arise out of or relate to' those activities[.]" *Burger King*, 471 U.S. at 472. Thus, for purposes of the first required showing to establish minimum contacts, *i.e.*, purposeful direction, the Court finds that *all* Defendant Katofsky's contacts with Colorado should be considered— even though not every contact may be material. *See Fluent LLC*, 955 F.3d at 840 (stating

that the Court must examine "both the quantity and quality of a defendant's contacts with the forum").

Of the three distinct purposeful-direction frameworks, the Court finds that the framework concerning the deliberate exploitation of the forum state market most clearly applies. *See PureHealth Rsch.*, 105 F.4th at 1309 n.9. In *Old Republic Insurance Company v. Continental Motors, Inc.*, 877 F.3d 896, 905-06 (10th Cir. 2017), the Tenth Circuit held that "[a]n out-of-state defendant's continuous and deliberate exploitation of the forum state market may . . . satisfy the purposeful direction requirement." (internal quotation and alteration marks omitted). Here, no doubt exists that Defendant Katofsky's contacts with Colorado "cannot by any stretch of the imagination be characterized as random, isolated, or fortuitous." *Keeton*, 465 U.S. at 774. Even excluding any potential personal trips to Colorado, all the dealings outlined above are directed at a business whose multi-sport complex is in Windsor, Colorado. Plaintiff has provided evidence that these regular business dealings stretch at least from March 2019 to April 2024. *See* Jeff Katofsky's LinkedIn page at https://www.linkedin.com/in/jeff-katofsky-0b191197/ ("Co-Founder & CEO Future Legends Complex Mar 2019-Present 5 yrs 9 mos Windsor, Colorado, United States"); *Phillips Decl.* [#22-1] ¶ 9. As previously noted, a plaintiff "need only make a prima facie showing of personal jurisdiction" to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(2). *AST Sports Sci., Inc.*, 514 F.3d at 1057. The Court finds that Plaintiff has done so here with respect to the "purposefully directed" element.

### 2.    The "Arise Out of or Relate To" Requirement

This second element requires Plaintiff to demonstrate that the "litigation results from alleged injuries that arise out of or relate to those activities[.]" *Burger King*, 471 U.S.

at 472. In other words, "[s]tep two of the minimum contacts test requires us to determine whether the plaintiff's injuries 'arise out of the defendant's forum-related activities." *Old Republic Ins. Co.*, 877 F.3d at 908. "The arising-out-of component of the test requires courts to ensure that there is an adequate link between the forum State and the claims at issue, regardless of the extent of a defendant's other activities connected to the forum." *Fluent LLC*, 955 F.3d at 840. The Tenth Circuit Court of Appeals has "interpreted the 'arise out of' language to require 'some sort of causal connection between a defendant's contacts and the suit at issue.'" *PureHealth Res.*, 105 F.4th at 1312 (quoting *Dudnikov*, 514 F.3d at 1078). The Circuit has used both proximate causation and "but-for" causation tests to meet this requirement. *Id.* at 1312-1313.

Under the proximate-causation test, the Court must "examine[ ] whether any of the defendant's contacts with the forum are relevant to the merits of the plaintiff's claim." *Dudnikov*, 514 F.3d at 1078 (citation and internal quotation marks omitted). "[T]he test for proximate causation for purposes of personal jurisdiction may be, in appropriate circumstances, somewhat looser than the tort concept of proximate causation." *Compañía de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269, 1288 (10th Cir. 2020). In short, under this test, the Court must "determine whether a nexus exists between a defendant's forum contacts and a plaintiff's cause of action." *PureHealth Res.*, 105 F.4th at 1313 (citation and internal quotation marks omitted). Under the "but-for" causation test, "any event in the causal chain leading to the plaintiff's injury is sufficiently related to the claim to support the exercise of specific jurisdiction." *Dudnikov*, 514 F.3d at 1078.

Here, Plaintiff's sole cause of action against Defendant Katofsky is for a breach of the Guaranty contract. *Compl.* [#10-1] ¶¶ 46-50. Plaintiff alleges that "[t]he obligations owed by [Defendant] Future Legends to [Plaintiff] in connection with the Agreement are unconditionally guaranteed by Defendant Katofsky," *id.* ¶¶ 17-18, and that both Defendants have failed under either the Agreement or the Guaranty to fully pay their obligations, *id.* ¶¶ 29, 33. Plaintiff further alleges that the Guaranty is "a valid and enforceable contract," *id.* ¶ 47, and that Defendant Katofsky "defaulted on his respective obligations under the Guaranty by failing to pay the amounts due and owing to [Plaintiff] under the Agreement." *id.* ¶ 48.

At a minimum, the Court finds that the "but-for" causation test is met. As alleged, but for Defendant Katofsky's knowing failure to act on paying on the Guaranty, in light of Defendant Future Legends' failure to pay on the underlying Agreement, Plaintiff "would not have a cause of action" for breach of contract because Plaintiff would not have damages. *See PureHealth Res.*, 105 F.4th at 1314; *see also W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (listing elements of a breach of contract claim). In the early stages of litigation, the plaintiff's burden to prove jurisdiction exists is light. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). Plaintiff has met that burden with respect to the "arise out of or relate to" requirement.

### 3.    Conclusion Regarding Personal Jurisdiction

Based on the foregoing, the Court finds that Plaintiff has met its burden of showing that Defendant Katofsky "has such minimum contacts with [Colorado] 'that he should reasonably anticipate being haled into court [ ]here.'" *Emps. Mut. Cas. Co. v. Bartile*

*Roofs, Inc.*, 618 F.3d 1153, 1159-60 (10th Cir. 2010) (quoting *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998) (citation omitted)).

Accordingly, the Court **recommends** that the Motion [#20] be **denied** to the extent asserted under Fed. R. Civ. P. 12(b)(2).

**B.    Venue**

Defendant Katofsky also seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(3) for improper venue. *Motion* [#20] at 4-8. Because the Guaranty underlying the venue issue provides that Illinois law governs the construction of its terms, *see* [#1-1] at 46, the Court applies Illinois substantive law to the case. *See Jones v. KP&H LLC*, 288 F. App'x 464, 468 (10th Cir. 2008). However, no dispute exists concerning the absence of any material difference between the application of Illinois law and Colorado law to interpretation of the parties' forum selection clause. *See Reply* [#23] at 8 n.2 ("[I]in this instance, the law of Colorado and the law of Illinois are the same."); *Response* [#22] at 11-12 (citing Tenth Circuit legal authority). Given this agreement and the fact that the Court is independently aware of no material differences between Illinois law and Colorado law on the relevant issues, the Court cites both jurisdictions.

Under Illinois law, "in fulfilling its task of contract interpretation, [a court's] 'primary objective is to give effect to the intention of the parties.'" *Full Circle Villagebrook GP, LLC v. Protech 2004-D, LLC*, 119 F.4th 522, 526 (7th Cir. 2024) (*quoting Thompson v. Gordon*, 948 N.E.2d 39, 47 (Ill. 2011)). "It achieves this objective by first focusing on the language of the contract, considering the contract as a whole, and not just its provisions in isolation." *Id.* "If the language is unambiguous, meaning it is not susceptible to more than one meaning, the words must be given their 'plain, ordinary and popular meaning.'" *Id.*

(quoting *Thompson*, 948 N.E.2d at 47). A court "will not add terms to a contract to change the plain meaning, as expressed by the parties." *Id.* (quoting *Wood v. Evergreen Condo. Ass'n*, 189 N.E.3d 1045, 1053 (Ill. App. Ct. 2021)).

Here, the parties do not dispute the venue provision's binding effect; rather, dispute its interpretation. As the Tenth Circuit did in *Jones v. KP&H LLC*, the Court "begin[s] with the plain language of the contract, and then turn[s] to the parties' proposed interpretations." 288 F. App'x at 468. The Guaranty provides:

> Guarantor irrevocably agrees that, subject to Levy's sole and absolute election, all actions or proceedings in any way, manner or respect, arising out of or from or related to this Guaranty shall be litigated in courts having situs within the City of Chicago and State of Illinois. Guarantor hereby consents and submits to the jurisdiction of any local, state or federal courts located within said city and state. Guarantor hereby waives any right he may have to transfer or change the venue of any litigation brought against guarantor by Levy in accordance with this paragraph.

*See* [#1-1] at 46 (all caps emphasis omitted).

Plaintiff interprets the provision in this case to be permissive, giving Plaintiff "the discretionary power to decide whether to initiate proceedings in the courts of Illinois or elsewhere." *Response* [#22] at 12-13. Defendant Katofsky interprets this provision to mean that "the parties intended that that any litigation between them must be litigated only [in] Chicago and not in the District Court of Colorado," because it "contains mandatory language that '[a]ll actions or proceedings' between Plaintiff and Mr. Katofsky as guarantor 'shall' be litigated in a court local in Chicago, Illinois." *Motion* [#20] at 7 (quoting *Guaranty* [#1-1] at 46). In support, Defendant Katofsky cites *Excell, Inc. v. Sterling Boiler & Mech., Inc.*, 106 F.3d 318 (10th Cir. 1997), and *Milk 'N' More, Inc. v. Beavert*, 963 F.2d 1342, 1346 (10th Cir. 1992). *Id.* at 6-7. In *Excell, Inc.*, the Tenth Circuit held that the contract's venue selection clause, stating that "[j]urisdiction shall be in the

State of Colorado, and venue shall lie in the County of El Paso, Colorado," was "clear and mandatory" and "require[d] that any breach of contract action be brought and litigated in the District Court of El Paso County, Colorado." 106 F.3d at 321. In *Milk 'N' More, Inc.*, the Tenth Circuit held that the contract's venue selection clause, stating that "venue shall be proper under this agreement in Johnson County, Kansas," was "reasonably clear" and "generally indicate[d] a mandatory intent," and that the trial court did not err in holding that Johnson County, Kansas was "the exclusive forum" in which disputes arising under the contract could be brought. 963 F.2d at 1345-46.

The Court finds the Eighth Circuit Court of Appeals case *BancorpSouth Bank v. Hazelwood Logistics Center, LLC*, 706 F.3d 888, 895 (8th Cir. 2013), to be highly persuasive. There, the Circuit addressed a guaranty's materially similar venue provision, which provided: "[A]t [the plaintiff-bank's] sole and absolute election, all legal and other proceedings of any kind arising out of or related to this Guaranty shall be litigated in courts having sites in the County of St. Louis, Missouri." *Id.* As does Defendant Katofsky here, the defendant there argued that the provision was mandatory because it used the word "shall." *BancorpSouth Bank*, 706 F.3d at 896. The Eighth Circuit held that the provision was unambiguous, and thus could be enforced as written, and that it was "applicable 'at [the bank's] sole and absolute election'" and did "not limit the bank's ability to select an alternative forum." *Id.* The Circuit emphasized that the provision was "permissive with respect to the bank only," and that "[t]he bank could enforce the choice of venue provision against [the defendant] were [the defendant] to bring suit elsewhere." *Id.*

Here, as well, the Guaranty's forum selection clause does not limit Plaintiff's right to select a forum other than a court within the City of Chicago. *See* [#1-1] at 46. The

mandatory language of the second part of the sentence ("shall be litigated in courts having situs within the City of Chicago") is qualified by the language of the first part of the sentence ("subject to Levy's sole and absolute election"). *Id.* The cases cited by Defendant Katofsky are not at odds with this interpretation. Both *Excell, Inc.* and *Milk 'N' More, Inc.* contained only mandatory language without any qualifying language like the language used by the parties here. *Excell, Inc.*, 106 F.3d at 321; *Milk 'N' More, Inc.*, 963 F.2d at 1345-46. Thus, Defendant Katofsky's request for dismissal based on improper venue must be denied.

Accordingly, the Court **recommends** that the Motion [#20] be **denied** to the extent Defendant Katofsky seeks dismissal under Fed. R. Civ. P. 12(b)(3) based on improper venue.

## IV. Conclusion

Based on the foregoing,

IT IS HEREBY **RECOMMENDED** that the Motion [#20] be **DENIED**.

IT IS FURTHER **ORDERED** that any party may file objections **within 14 days** of service of this Recommendation. In relevant part, Fed. R. Civ. P. 72(b)(2) provides that, "within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). The objection must be "sufficiently specific to focus the

district court's attention on the factual and legal issues that are truly in dispute." *Id.* "[A] party who fails to make a timely objection to the magistrate judge's findings and recommendations waives appellate review of both factual and legal questions." *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated: December 6, 2024                    BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge